RICHARD G. NOVAK (SBN 149303)
Law Offices of Richard G. Novak
65 North Raymond Avenue, Suite 320
Pasadena, CA  91103
626-578-1175 (voice)
626-685-2562 (facsimile)
E-Mail: Richard@RGNLaw.com

Attorneys for Defendant
James Herrera

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | Case No.  15-CR-499-JAK-2 |
| Plaintiff, | **DEFENDANT JAMES HERRERA'S** |
| | **MEMORANDM OF POINTS AND** |
| vs. | **AUTHORITIES IN SUPPORT OF** |
| | **APPLICATION FOR** |
| JAMES HERRERA, | **REVIEW/RECONSIDERATION OF** |
| | **CONDITIONS OF RELEASE;** |
| Defendant. | **DECLARATION OF COUNSEL AND** |
| | **EXHIBITS THERETO** |

Defendant JAMES HERRERA, by and through his counsel of record, RICHARD G. NOVAK, hereby files the attached memorandum of points and authorities in support of his application for review/reconsideration of the conditions of release.

Dated:  January 27, 2016      Respectfully submitted,


_____/s/_____
Richard G. Novak
Attorney for Defendant
JAMES HERRERA

**MEMORANDUM OF POINTS AND AUTHORITIES**

**I.**

**HISTORY OF MR. HERRERA'S VOLUNTARY SURRENDER, BOND HEARINGS**

**AND STIPULATED MODIFICATIONS**

The grand jury returned an indictment, which was sealed, on September 15, 2015, charging Mr. Herrera and others with financial crimes that had ended in June 2015. (Doc. No. 1) According to the Pre-Trial Services Report ("PSA Rep.") Mr. Herrera learned of his indictment while in Las Vegas and voluntarily appeared in court, with counsel, on September 17, 2015. The co-defendants are his older brother (Jack Hessiani) and two cousins.

The PSA Rep. noted that Mr. Herrera had no prior criminal history, no warrants, a record of employment, strong ties to this community including his parents, and no history of using substances banned under federal law other than a prescription for medical marijuana.

PSA recommended that he be released on a $50,000 bond, secured only by an affidavit of surety signed by one of his parents, both of whom live in Ventura County. His parents were present at the initial bond hearing.

The PSA Rep. noted, based apparently on information provided by the government, that Mr. Herrera had allegedly "threatened" law enforcement officers associated with the Ventura Port Operation. This information was considered by PSA when it made that bond recommendation.

At the bond hearing, the government sought detention, a position rejected by the Court. The government then went to

2

great lengths to emphasize the seriousness of the "threats" Mr. Hessiani had made to Ventura Port authorities. Even after the government's proffer, PSA stood by its recommendation, but the Court set bond at $200,000 and required Mr. Hessiani to secure that bond with full deeding of property by his parents, a condition that was satisfied on September 28, 2015. One of the conditions of bond was that he have no contact with employees of the Ventura Port. Another condition of release was that he participate in random drug testing.

At a hearing on co-defendant Hessiani's conditions of release held on December 16, 2015, the government falsely argued that both Mr. Hessiani and Mr. Herrera were named as respondents in a restraining order action brought by the Ventura Port in the Ventura Superior Court. The truth is that only Mr. Hessiani was named as a respondent in that action, and that Mr. Herrera is not and never was a respondent in that action. Exhibit A attached hereto is the docket in that matter. Moreover, there have been no criminal charges filed against Mr. Herrera for any form of threats or intimidation directed at any person associated with the Ventura Port. With the truth clarified, the Court modified Mr. Hessiani's bond to permit Mr. Herrera and his brother to have contact with each other without requiring the presence of counsel (Doc. No.103) and encouraged the government to stipulate to the same modification as to Mr. Herrera. The government thereafter did so (Doc. No. 104) and the Court so ordered. (Doc. No. 106)

Thereafter, Mr. Herrera and the government stipulated that the condition of release prohibiting Mr. Herrera from

1 having any contact with Ventura Port employees was also
2 unnecessary.   The parties stipulated to that modification
3 (Doc. No. 114) and the Court so ordered.   (Doc. No. 115)

4     In light of the correction of the record as to the danger
5 Mr. Herrera allegedly posed to Ventura Port employees, he now
6 moves this Court to modify the financial term of his release
7 to that originally recommended by PSA at the initial bond
8 hearing, a $50,000 affidavit of surety, *without deeding of*
9 *property*, signed by his mother.   The current bond is far
10 greater than necessary to ensure Mr. Herrera's appearance or
11 the safety of the community.

12     PSA has informed undersigned counsel that it takes no
13 position on this requested modification.   The government has
14 informed undersigned counsel that it is opposed to this
15 requested modification.   (Novak Decl. ¶ 2)

16     Mr. Herrera also moves this Court to reconsider its order
17 requiring random drug testing, and to remove that condition.
18 PSA has informed undersigned counsel that it takes no position
19 on this requested modification.   The government has informed
20 undersigned counsel that it is opposed to this requested
21 modification.   (Novak Decl. ¶ 2)
22 //
23 //
24 //
25 //
26 //
27 //
28

4

## II.

**THE GOVERNMENT'S PROFFER OF EVIDENCE THAT MR. HERRERA IS A**

**DANGER TO THE COMMUNITY WAS SIGNIFICANTLY EXAGGERATED**

As if there were an imminent threat of harm, the government argued at the bond hearing that Mr. Herrera should be detained because he was threatening and harassing Ventura Port employees and business owners. The relevant portions of the government's argument are attached hereto as Exhibit B. A recording of the entire bail hearing is lodged with the Court as Exhibit C.

Notwithstanding the government's argument, it now appears that there was little if any substance to its proffer. Mr. Herrera was not named in the restraining order petition that had been filed more than a month earlier, a fact not disclosed by the government. Nor has that petition subsequently been amended to add him as a respondent. Five months having passed since the restraining order was sought against only Mr. Hessiani, no criminal action for threatening or harassing conduct has been filed against either Mr. Herrera or Mr. Hessiani. Moreover, the citations issue against Mr. Herrera by the Ventura Port, not that vehicle code violations are evidence of a danger to the community, have all been dismissed. (Exhibit D)

Mr. Herrera submits that in light of the fact that the record does not substantiate the government's representations as to Mr. Herrera's conduct, Mr. Herrera's bond should be reconsidered. He is not a danger to the community and there is no credible allegation that he is.

### III.

### DRUG TESTING IS NOT NECESSARY TO ENSURE MR. HERRERA'S APPEARANCE

Since his voluntary surrender and release, Mr. Herrera has tested negative for all substances on at least 20 occasions. He has no history of drug related convictions or arrests and no convictions or arrests for any criminal offenses other than the instant charge.

This is also a condition of release that far exceeds that which is necessary to ensure his appearance or protect the community. It is unduly burdensome and interferes with Mr. Herrera's employment and volunteer work that often take him out of the Ventura area at times when he needs to be available for testing.

While it is well understood that federal law does not formally acknowledge California's medical marijuana program, Mr. Herrera's possession of a valid medical marijuana prescription is not a reason for random testing. PSA has confiscated Mr. Herrera's official identity card issued to him under California medical marijuana program and the Court has ordered Mr. Herrera not to use or possess any substances, including marijuana, which he could legally grow and consume under California law. Mr. Herrera does not seek modification of the condition prohibiting him from using medical marijuana or any other illegal substance; he merely seeks to be relieved from participation in the court-ordered testing program, testing that is not justified by the record.

# IV.

## THE STATUTORY FRAMEWORK

Where, as here, there is no credible allegation that Mr. Herrera is a threat to "the safety of any other person or the community" federal law requires the Court to release him on a personal recognizance bond or an unsecured affidavit or surety "unless the judicial officer determines that such release will not reasonably assure the appearance of the person." 18 U.S.C. § 3142(b). Where the Court determines that such a bond will not reasonably assure the appearance of the person as required the Court "shall" order the release of the person subject to "the least restrictive further condition, or combination of conditions, that such judicial officer determines will reasonably assure the appearance of the person as required." 18 U.S.C. § 3142(c) (1)(B) (emphasis added).

The Bail Reform Act of 1984 mandates release of a person facing trial under the least restrictive condition or combination of conditions that will reasonably assure the appearance of the person as required. *United States v. Honeyman*, 470 F.2d 473, 474-75 (9th Cir. 1972).

The Fifth and Eighth Amendments' prohibitions of deprivation of liberty without due process and of excessive bail require careful review of pretrial detention orders to ensure that the statutory mandate has been respected. *United States v. Motamedi*, 767 F.2d 1403, 1405 (9th Cir. 1985)

The Court shall "in determining whether there are conditions of release that will reasonably assure the appearance of the person as required" take into account the

available information concerning:

(1) the nature and circumstances of the offense charged;

(2) the weight of the evidence against the person;

(3) the history and characteristics of the person, including

(A) the person's character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings; and

(B) whether, at the time of the current offense or arrest, the person was on probation, on parole, or on other release pending trial, sentencing, appeal, or completion of sentence for an offense under Federal, State, or local law; and

(4) the nature and seriousness of the danger to any person or the community that would be posed by the person's release. 18 U.S.C. § 3142(g).

The statute was authoritatively interpreted by then-Circuit Judge Kennedy in *United States v. Motamedi*. The government has the burden of proof of the risk of flight. It must do so by a "clear preponderance of the evidence". *United States v. Motamedi*, 767 F.2d at 1406. The weight of the evidence against the defendant is a factor to be considered but it is "the least important" of the various factors. *United States v. Motamedi*, 767 F.2d at 1408. Consideration of the nature of the offenses charged involves consideration of the

1   penalties. *United States v. Townsend*, 897 F.2d 989, 995 (9th

2   Cir. 1990). Although the statute permits the court to consider

3   the nature of the offense and the evidence of guilt, the

4   statute neither requires nor permits a pretrial determination

5   that the person is guilty. These factors may be considered

6   only in terms of the likelihood that the person will fail to

7   appear or will pose a danger to any person or to the

8   community. Otherwise, if the court impermissibly makes a

9   preliminary determination of guilt, the refusal to grant

10  release could become in substance a matter of punishment.

11  *United States v. Motamedi*, 767 F.2d at 1408 (internal

12  citations omitted).[1]

13                              **V.**

14                          **CONCLUSION**

15      For the reasons stated above, Mr. Herrera asks that this

16  Court convene a hearing to review and reconsider the

17  conditions of release imposed upon him, and that upon the

18  conclusion of that hearing, this Court modify the conditions

19  of release by vacating the order requiring a $200,000 bond

20  secured by full deeding of property, substituting a $50,000

21  bond secured with an affidavit of surety without full deeding,

22  and removing the drug testing condition.

23      To the extent that the government persists in its

24  _____

25      [1]Another circuit has described the "clear preponderance

26  of evidence" standard as "slightly higher" than the
    "preponderance of evidence" standard. *United States v. Portes*,

27  786 F.2d 758, 765 n.9 (7th Cir, 1985).

28                              9

1  position that Mr. Herrera represents a threat to the safety of

2  Ventura Port employees or any member of the community, Mr.

3  Herrera asks that this Court convene an evidentiary hearing at

4  which the government is required to substantiate its

5  allegations with evidence that is subject to testing through

6  cross-examination.

7  Dated:  January 27, 2016          Respectfully submitted,

8

                                    _____/s/_____
9
                                    Richard G. Novak
                                    Attorney for Defendant
10                                  JAMES HERRERA

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28